FARMERS' LOAN & TRUST Co. v. L. C. & S. W. RY. Co.

*(Circuit Court, D. Indiana.   ———, 1880.)*

1. RAILROAD — RECEIVER — LIQUIDATED DAMAGES — ORDER OF COURT — CONSTRUCTION.

———, for plaintiff.

———, for defendant.

DRUMMOND, C. J.   On the first day of August, 1874, the city of Logansport entered into a contract with the Logansport, Crawfordsville & Southwestern Railway Company, and the Detroit, Eel River & Illinois Railroad Company, the object of which seems to have been to cause a certain portion of the Logansport, Crawfordsville & Southwestern Railway Company's road, which was at that time unfinished, to be completed so that it should extend to the city of Logansport; and to have a bridge constructed across the Wabash river, and to secure to the city of Logansport the permanent location and maintenance of the car manufacturing and machine shops of both roads; and, as a consideration, the city of Logansport agreed to issue $80,000 in bonds of the city, payable in 20 years, with interest at 7 per cent.   The railroad companies agreed, respectively, one or the other, to whichever it might belong under the contract, to go on and construct the bridge, and finish the road, and build and establish the machine shops at Logansport.   The contract contained a provision that the shops were to be commenced, and so far completed, as to be of sufficient capacity to do the work and

repairs of the companies, on or before the first day of November, 1875, and they were to be increased in size and capacity as the business of the railroads might require. "And it is further agreed by the parties to this agreement that should the said railroad companies, or either of them, fail to faithfully and honestly perform all the agreements in this contract on their part, they, or either of them, shall pay to the city of Logansport, as agreed, and liquidated damages, the sum of $40,000, without relief from valuation or appraisement laws."

At the time this contract was made, it was executed by the defendant company through its president, S. D. Schuyler. Afterwards, and soon after this contract was made, the Logansport, Crawfordsville & Southwestern Railway was placed in the custody of a receiver, by the order of this court. In September, 1874, the receiver, who had been president of the railway company, and who had executed this contract as such, made application to this court to enable him to carry out the terms of the contract, and on the third day of October, 1874, the court made an order in compliance with the application of the receiver. The order states that a portion of the road, viz., about five miles in length, extending from Clymer station to the city of Logansport, was unfinished, and that the same, when completed, would constitute part of the original line of the road, and that it would then enure to the benefit of the mortgage lien holders on the road. The order refers to the fact that the construction of the bridge across the Wabash river, at the city of Logansport, was necessary. It also speaks of the fact that the city of Logansport had donated the sum of $80,000 to complete the unfinished portion of the road, and that the Detroit, Eel River & Illinois Railroad Company was interested in the extension, and proposed to advance and give in aid of the same the further sum of $15,000. The order refers to the sum of $95,000, composed of the $80,000 on the part of the city of Logansport, and $15,000 on the part of the Detroit, Eel River & Illinois Railroad Company, which were to be advanced on behalf of the object which the receiver had in view. The order then proceeds to state: "And that the whole sum necessary, in addition to the

said gifts and advances, to be expended by said receiver, to complete said road and bridge, will not exceed the sum of $30,000. It is now ordered that he (the receiver) do expend such sum for the purpose aforesaid, and that he be empowered to enter into all contracts and agreements that shall be required for the purpose of the extension aforesaid. And as to all the moneys that may be expended, and all liabilities incurred, by said receiver in carrying out the provisions of this order, the earnings of said road are charged as with a first lien, prior to all encumbrances on said road."

The application of the city of Logansport is (the railway company having been sold under the order of this court on the foreclosure proceedings of the mortgagees) that a portion of the purchase money, which is now in the possession of the court, shall be appropriated towards the payment of the penalty which is imposed by this contract of August 1, 1874, on both the railway contracting parties; and, of course, on this railway, whose property has been sold. The proceeds of the sale being now in the hands of the court, the question is whether this can be done. I think it cannot, and that the court cannot make this order, nor grant the city of Logansport the relief which it asks. This is a penalty in the nature of liquidated damages, which the city of Logansport imposed on each of these contracting parties as a consideration for which it agreed, on its own part, to issue these bonds, and which have been issued. There can be no doubt, I think, as to what is the true construction of this order of the court: that it intended simply that the earnings of the road should be held and become a prior lien as against all encumbrances upon the road for the $30,000, or whatever sum was necessary over and above the $95,000 which was given by the other parties to complete this work. This being an expenditure of money made by the receiver, under the direction of the court, it would be an unreasonable construction of the order to hold that it included not only the money which the receiver might spend, but that which had been appropriated by the city of Logansport, and by the Detroit, Eel River & Illinois Railroad Company. The provisions of the order which the receiver

was to carry out, and for which, when executed, the earnings of the road were to be charged, as a first lien, prior to all encumbrances, was simply whatever might be spent by him over and above these two amounts. And it may be added that the receiver did not bring to the knowledge of the court, in his original and supplemental petition, the precise facts of the case, and so far as we know they did not appear to the court. The petition did not set up this contract, but only that this money had been appropriated by the city of Logansport, and by the Detroit, Eel River & Illinois Railroad Company. It said nothing about the contract, or the penalty which had been imposed by its terms upon each of these railway companies, but the receiver simply came to the court and asked for an order to make this expenditure of money, for the purpose of constructing the bridge, which would extend the road to Logansport and make the line complete. It is said that this is a part of the road which has been sold under the decree of the court, and that the mortgagees have the benefit of the contract which was made and the expenditure of the money. That is so, but the contract which the city of Logansport made was with the companies, and that city may have a valid claim against them. Of course, as this company is insolvent, we know that the contract is worth nothing, but in that respect it is not different from a great many other creditors who made contracts with this same railway company, and who do not pretend to come into court and ask for anything, because they know they are not entitled to relief. It is the misfortune of the city of Logansport, in common with that of a great many creditors of this and other insolvent railway companies.

I may add, that the application which is made by the city of Logansport, as the 20 years have not yet expired, does not allege it has paid these bonds, nor does it even claim it has paid the interest on them. The court does not know judicially that the city of Logansport has ever spent a dollar. It is true, it may be said to be liable on these bonds. That is a question we are not now called upon to decide, but, so far as the application is concerned, they do not claim that they

have paid anything, I take it that the main object which the city of Logansport had in making this contract, and in causing this subscription under the law of this state by a proper application of the voters to the city council, was to get the railroad finished to the city of Logansport, and probably to have the machine shops constructed there. That it has failed in that object is its misfortune, and I do not think the court can give relief by appropriating any portion of the money now in the hands of the court to the payment of this claim, and it will, therefore, be dismissed.